**INB NATIONAL BANK, Successor Personal Representative of the Estate of Kenneth C. Moran, and Estate of Kenneth C. Moran, Appellants–Defendants,**

v.

**MORAN ELECTRIC SERVICE, INC., Joyce Moran Chaney, and Ethel Moran, as Personal Representative of the Estate of Robert W. Moran, Deceased, Appellees–Plaintiffs.**

No. 55A01–9205–CV–133.

Court of Appeals of Indiana,
First District.

Feb. 3, 1993.

Transfer Denied April 14, 1993.

Alan H. Lobley, Lisa S. Sciscoe, Scott S. Stone, J. Scott Fanzini, Ice Miller Donadio & Ryan, Indianapolis, for appellants-defendants.

Edward O. Delaney, David F. Hamilton, William D. Hammel, Barnes & Thornburg, Indianapolis, amicus curiae [1].

Sydney L. Steele, Richard S. Pitts, Lowe Gray Steele & Hoffman, Indianapolis, for appellees-plaintiffs.

ROBERTSON, Judge.

Defendants–Appellants, INB National Bank, Successor Personal Representative of the Estate of Kenneth C. Moran, and the Estate of Kenneth C. Moran, deceased [defendants are hereinafter referred to as Kenneth] appeal the judgment entered after a bench trial in favor of Plaintiffs–Appellees, Moran Electric Service, Inc., Joyce Moran Chaney, and Ethel Moran as the Personal Representative of the Estate of Robert W. Moran, deceased. The lawsuit focuses upon the conduct of Kenneth as president of Moran Electric Service, Inc. and, in particular, a transaction which took place in 1981 in which the corporation

---

1. An Amicus Curiae brief has been filed in support of the Appellants. The Appellees have filed a motion to strike this brief. We have resolved this case without reference to the Amicus Curiae brief.

transferred 48 shares of its treasury stock to Kenneth in exchange for the forgiveness of indebtedness purportedly owed by the corporation to Kenneth.

The plaintiffs filed suit on August 12, 1991, less than a month after Kenneth's death. After a trial, the trial court granted the plaintiffs' request for relief by ordering Kenneth's estate to return the 48 shares of stock to the corporation. Kenneth raises seven (7) issues on appeal, but because one is dispositive, we address it only. Restated, it is:

Whether the plaintiffs' claims are barred by the applicable statute of limitations?

## FACTS

The facts in the light most favorable to the trial court's judgment indicate that John Moran founded Moran Electric Service, Inc. in the 1930's. The corporation's primary business is the repair of heavy duty electrical motors. John was the controlling shareholder, director, and president of the corporation until his death in 1978. In his will, John left the corporation to his children, Robert W. Moran, Kenneth C. Moran, and Joyce Moran Chaney, the three persons (two of whom are deceased) primarily involved in the corporate transactions that underlie this lawsuit. At and after John's death in 1978, the three children served as directors of the corporation. Kenneth became president; Robert continued as secretary and treasurer; and Joyce was in charge of advertising. Kenneth and Robert both died before the filing of this lawsuit.

The evidence at trial indicated that Kenneth did not work much as president of the corporation. Nevertheless, he took unreasonable and excessive compensation from the corporation by controlling and manipulating the entries made on the company books. Kenneth kept the corporation "broke" by misappropriating corporate funds for himself and by paying himself an excessive salary. Kenneth caused the corporation to pay for many of his personal purchases. For example, he collected guns and had the corporation issue checks payable to the gun collector who acquired guns

for him. These payments were charged to the corporation as legal and professional expenses. At Kenneth's death, more than 500 guns were found in his office and were a part of his estate.

Not surprisingly, Kenneth never recorded the monies he misappropriated from the corporation in the company books. The company ledger included an account which purportedly tracked the debt Kenneth owed the corporation or that the corporation owed him. Kenneth controlled this account and manufactured significant amounts of debt that the corporation purportedly owed him. In August of 1981, the account indicated the corporation owed him over $328,-000.00. Had the flow of monies been accurately recorded, the account would have indicated that Kenneth owed the corporation a significant amount of money.

A director's meeting was held on August 28, 1981. The only persons present at the meeting were Kenneth, Kenneth's attorney (who also served as the corporation's attorney), Robert C. Moran, and Joyce Moran Chaney. At the meeting, the directors passed the following resolution which was recorded in the corporate minutes:

RESOLVED: That the officers of said Corporation are authorized to sell 48 shares of treasury stock presently held by the company to Kenneth C. Moran for a price of $6,833.81 per share, the same to be paid for by the forgiveness of his existing debt of that amount to the company, and any balance due shall be paid to the company within 60 days.

The price of the shares was set to approximately equal the amount recorded in Kenneth's account as owed to him. These 48 shares, when combined with other shares that Kenneth had obtained through purchase and inheritance, gave Kenneth a controlling interest in the corporation. After the meeting, the only shareholders of the corporation were Kenneth, Robert, and Joyce.

The trial court granted the plaintiffs their desired relief by ordering Kenneth's estate to return the 48 shares to the corporation. The trial court's rationale can be summarized from the following excerpts of

its FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT ENTRY:

15. The debt claimed by Kenneth C. Moran to have been owed to him by the Corporation that had been placed upon the books of the Corporation in his personal account (Account No. 23-3) was not in fact an "existing debt" owed to Kenneth C. Moran.

16. On August 28, 1981, there was no "existing debt" owed by the Corporation to Kenneth C. Moran, and neither [Kenneth's attorney] nor Kenneth C. Moran advised the directors of this fact.

\*   \*   \*   \*   \*   \*

18. On August 28, 1981, Kenneth Moran was indebted to the Corporation for excessive and unreasonable compensation he had taken from the Corporation, and for use of company property other than for company business. These debts were not all recorded in Kenneth Moran's personal account with the Corporation. Kenneth Moran kept the Corporation "broke", and it could not pay all its payroll, taxes and other ordinary and necessary business expenses. This necessitated a payback of funds by Kenneth to this Corporation. This payback to the Corporation was recorded in Kenneth Moran's personal account with the company as a "credit" to him, though all his debts to the Corporation had not been recorded. Therefore, Kenneth C. Moran's personal account with the Corporation (Account 23-3) did not accurately reflect that there was no "existing debt" owed by the Corporation to Kenneth C. Moran on August 28, 1981.

19. The unreasonable and excessive compensation paid to Kenneth C. Moran before August 28, 1981 exceeded, and cancelled and nullified, any "credit" shown in Account No. 23-3 to which he may have been entitled from the Corporation.

20. The value of property of the Corporation personally used by Kenneth C. Moran before August 28, 1981 exceeded, and cancelled and nullified, any "credit" shown in Account No. 23-3 to which he may have been entitled from the corporation.

21. Because there was no "existing debt" owed by the Corporation to Kenneth C. Moran on August 28, 1981, there was nothing that could be forgiven as consideration for the purchase by him of the 48 treasury shares of the Corporation that are the subject of this cause.

\*   \*   \*   \*   \*   \*

2. The law and facts are with the Corporation and other Petitioners and against the Respondent regarding the ownership of the 48 shares of common stock that are the subject of this cause of action.

3. There was no existing debt owed by the Corporation to Kenneth C. Moran on August 28, 1981, and nothing of value was received by the Corporation in exchange for the 48 treasury shares issued to Kenneth C. Moran.

4. The law of Indiana requires "consideration" for all contracts, including a sale or transfer of corporate stock. There was no consideration paid by Kenneth C. Moran to the Corporation for the 48 shares of common stock issued or sold to Kenneth C. Moran pursuant to the directors resolution adopted August 28, 1981.

5. The transaction for the sale of the 48 shares of common stock of the Corporation to Kenneth C. Moran is void for lack of consideration. Legal title never transferred to Kenneth C. Moran. Alternatively, the transaction for the sale of those 48 shares is voidable for failure of consideration, and the shares should be returned to the Corporation, as a matter of law and equity, or because the transaction was properly rescinded.

Additional facts are supplied as necessary.

### DECISION

#### A.

Whether the trial court's finding that the present lawsuit was governed by the twenty (20) year statute of limitations

applicable to actions upon contracts in writing is clearly erroneous?

■ The trial court found:

7. The transaction between Kenneth C. Moran and the Corporation was a "contract in writing" entered into before September 1, 1982, and therefore the 20 year statute of limitations under Indiana Code 34–1–2–2(6) is applicable to this action.

The "contract in writing" that the plaintiffs assert causes the twenty-year limitations period to apply is the August 28, 1981 director's meeting minutes which contain the resolution pertaining to the transfer of the 48 shares to Kenneth set out above in the FACTS section.

■ The substance of the action, rather than its form, determines the applicable statute of limitations. *Whitehouse v. Quinn* (1985), Ind., 477 N.E.2d 270. The mere existence of a written document associated with a cause of action does not automatically enable a claimant to avail himself of the twenty-year statute of limitations in order to avoid a shorter statute of limitations; the written document must in fact be the basis for the claim being pressed. *Matter of Widau* (1978), 177 Ind.App. 215, 378 N.E.2d 936. For written, integrated contracts where proof problems are minimal, Indiana provides a twenty-year statute of limitations, I.C. 34–1–2–2(6). *Movement for Opportunity & Equality v. General Motors Corp.* (7th Cir.1980), 622 F.2d 1235. However, for general contract actions which must rely on parol evidence, people's memories, and extraneous documents, Indiana applies a considerably shorter six (6) year statute of limitations, I.C. 34–1–2– 1. *Id.* In *International Union of United Auto, Aerospace and Agricultural Implement Workers of America (UAW), AFL– CIO v. Hoosier Cardinal Corp.* (7th Cir. 1965), 346 F.2d 242, *cert. granted* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (affirmed), the court held that the twenty-year statute of limitations applicable to actions on written contracts was inapplicable in a union's action for employees' vacation pay allegedly due under a collective bargaining agreement because the contract which formed the basis of the plaintiffs' claims was not the collective bargaining agreement but the individual employment contracts which had not been reduced to writing.

In the present case, the plaintiffs' complaint did not indicate that the action was based on the corporate minutes. The complaint was styled "Verified Petition for Injunction, Replevin and Other Relief." The allegations in the complaint pertain to Kenneth's 1) breach of fiduciary duties owed to the corporation and its shareholders, 2) taking of excessive compensation, 3) misappropriation and conversion of corporate property and funds, and 4) misrepresentations that he was owed substantial funds by the corporation. Incidentally, the plaintiffs did not attach the corporate minutes in question to their complaint as is required under Ind.Trial Rule 9.2 for an action founded on a written instrument.

The plaintiffs' action is not appropriately characterized as an action upon a contract in writing. Although the transfer of the 48 shares was recorded in the corporate minutes, the corporate minutes themselves were not the basis of their lawsuit. The *substance* of the action was based on Kenneth's misconduct as president of the corporation. The plaintiffs' action was based on their assertions that Kenneth manipulated the company books, misappropriated and converted corporate property and, in actuality, owed the corporation substantial sums of money in 1981 when the challenged transfer took place. The plaintiffs sought to prove that in 1981 there was no "existing debt" owed by the corporation to Kenneth.

The twenty-year statute of limitations applicable to actions based on contracts in writing does not apply to the present case. Therefore, the trial court's finding that the twenty-year statute of limitations did apply is clearly erroneous.

**B.**

Whether the trial court's finding that any applicable statute of limitations was

tolled until Kenneth's death is clearly erroneous?

■ The trial court found that:

8. Because Kenneth C. Moran as president dominated the financial affairs of the Corporation from his father's death in 1978 until his death on July 14, 1991, any applicable statute of limitations did not begin to run until July 14, 1991 when Kenneth C. Moran no longer dominated the affairs of the Corporation. This action is not barred by any applicable statute of limitations.

The trial court entered the following finding which supports the "presidential domination" theory:

25. In February, 1984, an attorney retained by Kenneth C. Moran to respond to complaints and objections of Joyce Moran Chaney advised her lawyer "that the transaction was both proper and documented." The transaction referred to was the transaction that was at issue in this cause. Additionally, upon receiving complaints and objections from Joyce Moran Chaney, Kenneth C. Moran withheld her payroll checks and intimidated her from taking any action against him.

■ A statute of limitations can be extended only for legal disability, including incompetence, minority, imprisonment, non-residency under certain circumstances, war, death in certain instances, and fraudulent concealment. *Walker v. Memering* (1984), Ind.App., 471 N.E.2d 1202. The circumstances under which a statute of limitations can be extended are defined by statute. *Id;* I.C. 34–1–2–5 through I.C. 34–1–2–9.

Plaintiffs base their "presidential domination" theory on three cases, none of which involved a statute of limitations or relied upon Indiana law. The court in *Central Railway Signal Co. v. Longden* (7th Cir.1952), 194 F.2d 310, held that where a president dominates a corporation, the corporation's claim against the president would not be barred by laches. The *Cen-*

*tral Railway* court noted that laches would not attach as the delay did not work a disadvantage to the defendant. *Id.* The court applied the law of both Massachusetts and Indiana; however, the "presidential domination" theory was derived from Massachusetts law. Moreover, a close reading reveals that the case was not so much concerned with the president's dominance of corporate matters as with the president's concealment of his usurpation of corporate opportunities. *Id.* at 318.

The 1955 New Jersey case of *Hill Dredging Corporation v. Risley* (1955), 18 N.J. 501, 114 A.2d 697, also involved a claim of laches asserted by the former president as a defense against the corporation's claim. The unreasonable delay asserted was a period of two (2) months. The president held the challenged board meeting on July 19, 1951. The corporation made its formal demand upon him September 27, 1951 and filed suit November 14, 1951. 114 A.2d at 716.

The 1968 Mississippi case of *Bentz v. Vardaman Manufacturing Co.* (1968), Miss., 210 So.2d 35, involved claims of laches and estoppel. In utilizing the "presidential domination" theory in rejecting these defenses, the court noted that nearly all of the complained-of misconduct fell within the six (6) year statute of limitations. *Id.* at 44.

The "presidential domination" theory of tolling a statute of limitation has not been recognized in Indiana. Moreover, we do not believe that Kenneth's domination of corporate matters should excuse the Plaintiffs' untimely filing of the lawsuit under the present circumstances. Robert's and Joyce's long acquiescence in Kenneth's misconduct (as will be discussed under section C below) arguably constitutes a breach of their own fiduciary obligations to the corporation. *See Dotlich v. Dotlich* (1985), Ind.App., 475 N.E.2d 331, 343, *trans. denied.*[2] The trial court's finding that any

---

**2.** That the recovery of the 48 shares accrues to the corporation does not militate toward the propriety of recognizing the "presidential domination" theory in the present case. With the 48

shares back in the treasury, Robert's estate and Joyce, as the owners of a controlling block of outstanding shares, would substantially benefit

applicable statute of limitations was tolled until Kenneth's death is clearly erroneous.

### C.

Whether the applicable statute of limitations had expired by the time the action was filed?

As noted above, the substance of the action, rather than its form, determines the applicable statute of limitations. *Whitehouse*, 477 N.E.2d 270. The present lawsuit can be appropriately characterized as one for fraud or for the recovery of personal property. In either event, the applicable statute of limitations is six (6) years. I.C. 34–1–2–1.[3]

A cause of action accrues, and thus the statute of limitations begins to run, when the resultant damage of a tortious act is susceptible of ascertainment. *Madlem v. Arko* (1992), Ind., 592 N.E.2d 686. A cause of action accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. *Id.* The statute of limitation for a cause of action against a director in a close corporation for the misappropriation of corporate assets is tolled until the director's wrongful conduct is either disclosed or discovered. *Dotlich*, 475 N.E.2d 331, 341, 342.

In the present case, there can be no serious dispute that the plaintiffs were well-aware of the precise nature of their cause of action against Kenneth no later than 1984. James Brady, comptroller and office manager for the corporation, testified for the plaintiffs over the defendants' objection to his competency based on the dead man's statute. Brady testified unequivocally that Robert was well-aware of the fraudulent nature of Kenneth's entries in the company books in the years of 1981 and 1982 which lead up to the challenged transfer of the 48 shares. Brady testified that, although Robert did not like it, he nevertheless knowingly authorized many fraudulent transactions for Kenneth on a frequent basis.

Joyce, acting through her attorneys, wrote a letter to Kenneth dated February 8, 1984, which reads in pertinent part as follows:

> Our office represents Joyce A. Moran–Chaney who is an Officer, Director and

---

from the long acquiescence in Kenneth's misconduct.

**3.** The present cause of action could also be characterized as an action for rescission based on fraud. The rescission of a contract requires affirmative action immediately upon the discovery of the fraud. *Griffin v. Axsom* (1988), Ind. App., 525 N.E.2d 346. A party who seeks the aid of the court to compel the rescission of a contract must show that he or she has exercised reasonable diligence in ascertaining the facts and has been prompt in seeking the remedy within a reasonable time after the fraud is discovered. *Id.* Whether the party seeking rescission has acted within a reasonable time is ordinarily a question of fact, but where the facts have been ascertained, it becomes a question of law. *Id.* Whether a delay in bringing an action for rescission results in waiver depends on whether the delay has been long enough to result in prejudice to the other party. *Brown v. Young* (1915), 62 Ind.App. 364, 110 N.E. 562.

The present lawsuit was filed ten (10) years after the challenged transaction was completed. The exercise of reasonable diligence by the plaintiffs, as directors of the corporation, would certainly have resulted in the discovery of the alleged fraud at the time the transaction was completed or soon thereafter. The evidence overwhelmingly demonstrates that the complaining directors were in fact aware of the fraud at least as early as 1984, approximately seven (7) years before this suit was filed. The filing of suit was delayed until after the death of the defendant director, at a time when he was no longer in a position to defend his actions or dispute the allegations against him. We have no hesitation in concluding that, as a matter of law, the plaintiffs have waived their remedy of rescission based on fraud by unreasonable delay.

In any event, we have been cited to no authority, nor are we aware of any, that would allow a complaining party a longer period of time in which to bring an action for rescission based on fraud than is allowed for the bringing of a general action based on fraud. We are aware, however, of copious authority that a complaining party is allowed a much shorter period in which to bring an action for rescission based on fraud than is allowed for a general action in fraud. *See Griffin*, 525 N.E.2d 346 (and cases cited therein). Therefore, for simplicity, we have analyzed this case under the six-year statute of limitations applicable to actions based on fraud.

Minority Shareholder of Moran Electric Service, Inc. On her own behalf and on behalf of the corporation, Ms. Chaney asserts that you have breached your fiduciary duty to her, the corporation, and the other officers, directors and shareholders by the following acts:

1. Use of a fraudulent scheme to gain a majority interest in the stock of the corporation;
2. Self-dealing in violation of Indiana Code in that you have used corporate assets to gain personal advantage;
3. Diversions of corporate funds to your personal use;
4. The drawing of excessive salary and bonus to the detriment of the corporation;

    \*     \*     \*     \*     \*     \*

In order to remedy these breaches, we propose the following terms of settlement:

1. That you relinquish actual control over the affairs of the corporation, but retaining [sic] your office in the corporation;
2. That the stock of the corporation be split equally between yourself, Robert W. Moran, and our client, Joyce A. Chaney as was the express wish of your father as evidenced in his will.

There can be no doubt that plaintiffs' cause of action had accrued by 1984. Therefore, the six-year statute of limitations had expired by the time the action was filed in 1991.

## CONCLUSION

The statute of limitations applicable to the plaintiffs' claim had expired by the time the action was filed. Therefore, we must reverse and remand with instructions that judgment be entered for the defendants.

BAKER and SHIELDS, JJ., concur.