Mark CHENOWETH, the Jonesboro, Indiana Police Department and Town of Jonesboro, Indiana, Appellants–Defendants,

v.

The ESTATE OF Peter Alan WILSON, Deceased, and Dorothy Marie Wilson, Appellees–Plaintiffs.

No. 27A05–0406–CV–313.

Court of Appeals of Indiana.

May 3, 2005.

Kenneth Collier–Magar, Liberty L. Roberts, Collier–Magar & Roberts, P.C., Indianapolis, IN, Attorneys for Appellants.

Robert W. Schatz, James A. Mckown, Jr., Bosley, Schatz, Bolinger & Mckown, Marion, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Mark Chenoweth, the Jonesboro Police Department, and the Town of Jonesboro (collectively, "Defendants") bring this interlocutory appeal of the trial court's denial of their motion for summary judgment in the action filed by Dorothy Marie Wilson ("Wilson"), individually and as the personal representative of the estate of her late husband Peter.

We reverse and remand.

*ISSUE*

Whether the trial court erred when it denied Defendants' motion for summary judgment.

## FACTS

At about 1:30 a.m. on August 11, 2001, Officer Mark Chenoweth—an officer with the Jonesboro Police Department—was on foot patrol checking downtown businesses in Jonesboro. He observed a van speed across Main Street without its headlights on and fail to stop at the stop sign. Chenoweth got in his patrol car and turned down the street to follow the van. When Chenoweth next saw the van, its headlights were still off; and after Chenoweth turned behind it, the driver turned on the van's headlights. Chenoweth observed that the van was in the wrong lane and saw it swerve back and forth in the street. After the van disregarded another stop sign and increased its speed, Chenoweth activated his lights and siren to effect a stop of what he suspected to be a drunk driver.

Upon activating his lights and siren, Chenoweth radioed dispatch that he was attempting to make a traffic stop. Approximately four (4) miles later, the fleeing van—driven by Joseph E. Williams II—struck the vehicle being driven by Wilson's husband, Peter. Peter was killed instantly.

On July 8, 2002, Wilson filed a complaint alleging that Williams negligently operated the van, causing the collision that resulted in her husband's death. Her complaint also alleged that Chenoweth negligently operated his patrol car, which was also the proximate cause of her husband's death, and that the town of Jonesboro and its police department were liable therefor on the basis of *respondeat superior*. In addition, Wilson alleged that the town and the police department were "negligent in the hiring, training, supervision and control" of Chenoweth, which was the proximate cause of the collision that resulted in her husband's death.

On May 7, 2003, after extensive discovery by both sides, Defendants filed a motion for summary judgment. They asserted statutory immunity pursuant to the Indiana Tort Claims Act and their compliance with Indiana law as to the training of law enforcement officers. Designated evidence in support of their motion was submitted to the trial court, including documentation of Williams' conviction for his criminal conduct of fleeing law enforcement and causing the death of Peter Wilson. Defendants also designated Wilson's complaint, wherein she acknowledged that Chenoweth was "acting within the scope of his employment" during his pursuit of the van, (App.5), as establishing that material, undisputed fact. Defendants further argued that pursuant to a provision of the Indiana Tort Claims Act,[1] they were immune because Chenoweth "was in his patrol car, pursuing a drunk driver who had refused to stop and who continued to disobey the officer's efforts to stop [him] as he drove recklessly at a high rate of speed." (App.22). Thus, they argued, Chenoweth "was enforcing the law" as a police officer. *Id.* With respect to Wilson's training and oversight claim, Defendants referred to Indiana's statutory requirements for training of a new law enforcement officer and submitted designated evidence which established that Chenoweth was in full compliance therewith.[2] Defendants also sub-

1. Ind.Code § 34–13–3–3 provides as follows:

    A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:

                * * * * *

    (8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

2. The designated evidence established that Chenoweth had begun employment as an

mitted as designated evidence the affidavit of Larry Furnas, as an expert and who had served with the Indiana State Police for 25 years—including 14 years as an instructor at the Law Enforcement Training Academy and 3 years as the superintendent of the Indiana State Police, and who had personally participated in more than 150 high speed chases. Based upon his review of the police department's written policies and procedures, the audiotape of the radio transmissions that night, Chenoweth's deposition, the accident report, and his personal drive of the pursuit route, Furnas opined that given the circumstances, Chenoweth's pursuit was appropriate and compliant with the department's policies. Thus, Defendants argued that Wilson's claim of lack of training and oversight must fail as well.

In opposition to Defendants' motion for summary judgment, Wilson designated the entirety of her own deposition, her complaint, Chenoweth's deposition, the deposition of Jonesboro's police chief, and all evidence designated by Defendants. Her memorandum of fact and law in opposition to defendant's motion for summary judgment asserted a number of facts which she alleges, without specificity, as having been established by the entirety of the "undisputed evidence." However, she cited only to the source of such evidence as a whole (e.g. "Wilson deposition"). (App.275). Wilson further argued that based on *Quakenbush v. Lackey*, 622 N.E.2d 1284 (Ind.1993), Defendants were not entitled to immunity under the Indiana Tort Claims Act. She also argued that it was "for the jury to decide" whether the town and its police department were negligent in not having sent Chenoweth earlier to the basic

training course; not having provided specific training to him on high speed pursuit; not having tested him on the written department policy regarding pursuit; and not having activated its policy whereby the police chief was notified when the pursuit commenced. (Tr. 288).

On April 26, 2004, the trial court denied Defendants' motion. Its order found "genuine issues of material fact as to whether [Chenoweth]'s conduct fell below a level of care ordinarily a prudent person would have exercised under the same or similar circumstances" and "genuine issues of fact regarding the supervision issue." (App.3). Defendants filed a motion to certify the ruling for interlocutory appeal, and the trial court granted the motion. We accepted jurisdiction pursuant to Indiana Appellate Rule 14(B).

### DECISION

■■■ Upon appeal from a trial court's ruling upon a motion for summary judgment, our standard of review is well settled. Summary judgment is appropriate when the designated evidentiary matter reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that there is an entitlement to judgment as a matter of law. If the moving party meets these requirements, the burden then shifts to the nonmovant to establish genuine issues of material fact for trial. Upon appeal, we are bound by the same standard as the trial court. We consider

officer in May of 2001, after successfully completing Indiana's required forty-hour pre-basic training course. Ind.Code § 5–2–1–9 requires that law enforcement officers complete a specific "pre-basic" forty-hour

training course before appointment and "within one (1) year from the date of appointment," also complete the "basic training" course.

only those facts which were designated to the trial court at the summary judgment stage. We do not reweigh the evidence, but instead liberally construe the designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact.

*St. Joseph County Police Department v. Shumaker,* 812 N.E.2d 1143, 1144 (Ind.Ct. App.2004), *trans. denied* (internal citations omitted).

### I.

The issue of immunity under the Indiana Tort Claims Act is a question of law for the courts. *Id.* We review such questions de novo, and we owe the trial court no deference in that regard. *Id.*

In *St. Joseph County,* Judge Sullivan painstakingly traced the development of Indiana law on the scope of law enforcement immunity pursuant to the Indiana Tort Claims Act. He noted that our supreme court had abandoned the analysis previously articulated in *Quakenbush v. Lackey,* the case argued to the trial court by Wilson. He concluded that under *Mullin v. Mun. City of South Bend,* 639 N.E.2d 278 (Ind.1994), and *King v. Northeast Security, Inc.,* 790 N.E.2d 474 (Ind. 2003), "enforcement of the law" as that phrase is used to evoke the application of immunity under the Act "means compelling or attempting to compel the obedience of another to laws...." *St. Joseph,* 812 N.E.2d at 1150. If the challenged conduct seeks to compel another's obedience to law which is "within the scope of the entity's purpose or operational power," then the governmental entity is statutorily immune for that enforcement action. *Id.*

Here, Chenoweth observed actions by Williams which violated various traffic laws which led him to suspect that Williams was a drunk driver. When Chenoweth tried to execute a traffic stop, Williams fled. Fearing for the safety of the public, Chenoweth engaged in a pursuit of Williams. Therefore, Chenoweth was attempting to enforce the law when the van driven by Williams collided with Peter Wilson's vehicle, resulting in his death. Accordingly, as a matter of law, the trial court erred when it did not find Defendants were entitled to summary judgment on the claim that Chenoweth's conduct was negligent. Chenoweth, the town, and its police department are entitled to statutory immunity on Wilson's claim that Chenoweth was negligent.

### II.

Wilson also claimed that the town and the police department were negligent in the hiring, training, supervision and control of Chenoweth. Indiana law requires certain training for new law enforcement officers. Specifically, in order to initially serve for a period of one year as a law enforcement officer authorized to make an arrest, conduct a search or a seizure of a person or property, and carry a firearm, the individual must successfully complete a forty-hour "pre-basic course" of training. I.C. § 5–2–1–9. This course, designed by the Law Enforcement Training Board, covers "the subjects of arrest, search and seizure, use of force, and firearm qualification." *Id.* at (f). Defendants submitted designated evidence that established Chenoweth had been trained as required by law, and Wilson's brief effectively concedes as much (stating, "Chenoweth met the [statutory] requirement...."). Wilson's Br. at 3.

Nevertheless, Wilson argues that "it should be up to the jury to decide if he had enough training to be involved in a high speed chase." *Id.* We are not persuaded, in that we believe the necessary training for law enforcement officers has been established by the statute, subject only to

the details of that training being further defined by the Board. At the very least, the uncontroverted evidence that the officer had completed the statutory training would establish the rebuttable presumption of adequate training of the officer. If considered such a rebuttable presumption, Wilson would have had to provide designated evidence supporting the inference that the statutory training was inadequate. She did not do so. Further, Defendants' designated evidence—an affidavit by an expert on training at the Law Enforcement Training Academy stating that even if Chenoweth had been provided the additional "emergency vehicle operation course" training provided in "basic training," that training "would not have required Officer Chenoweth to have conducted himself any differently on August 11, 2001"—was not rebutted by Wilson. (App. 218). Accordingly, we conclude that Chenoweth's designated evidence was sufficient to negate as a matter of law Wilson's claim of negligent training.

Wilson also cites to the police department policy which allows a pursuing officer "to abandon a pursuit" when "there is a clear and unreasonable danger to the officer and other users of the roadway created by the pursuit that outweighs the necessity for immediate apprehension." (App.187). Furnas' affidavit opined that based upon the "relatively short" duration of the pursuit and the time it occurred, there would have been "a low volume of traffic expected" at 1:30 a.m. on the roadway; that there was "limited access from the right side of the roadway," and the pursuer's view was "unobstructed ... for nearly all of the pursuit"; that Chenoweth was "familiar with the area"; that Chenoweth "maintained an adequate and safe distance between his vehicle" and Williams'; and that he "made appropriate radio transmissions to assisting officers." (App.219). These facts led Furnas to conclude that Chenoweth's pursuit was "appropriate," *id.*, and Wilson submitted no designated evidence purporting to establish in opposition a material issue of fact in this regard. *See Ling v. Stillwell*, 732 N.E.2d 1270, 1276 (Ind.Ct.App.2000), *trans. denied*, ("specificity is the mandate" of Ind. Trial Rule 56(C)'s requirement that non-moving party designate material issues of fact in response to motion for summary judgment).

Wilson also argues that pursuant to *St. Joseph*, there is a separate issue as to the negligence of the town and its police department in not "following ... [its] own regulations." Wilson's Br. at 5. We cannot agree. The department's regulations spoke to the conduct of a pursuit initiated to apprehend a person "suspected of driving under the influence of alcohol." (App. 185). Thus, the purpose of such pursuit would be the enforcement of the law. Therefore, any claimed negligence as to the following of that procedure would be within the scope of the police department's "purpose or operational power." *St. Joseph*, 812 N.E.2d at 1150.

The trial court's denial of Defendants' motion for summary judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

MAY, J., and BARNES, J., concur.