**Paula K. CRUM, Thomas D. Gonzalez, Kaleel M. Ellis, II, and Mary H. Ellis, Appellants–Defendants,**

v.

**CITY OF TERRE HAUTE, by and through its DEPARTMENT OF RE-DEVELOPMENT, Appellee–Plaintiff.**

No. 84A04–0309–CV–441.

Court of Appeals of Indiana.

July 22, 2004.

Kaleel M. Ellis, III, Justin E. Long, Ellis Law Offices, Terre Haute, IN, Attorneys for Appellants.

Lynn Francis, City of Terre Haute Legal Department, Terre Haute, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Kaleel M. Ellis, II, and Mary H. Ellis (Ellises) appeal the trial court's grant of summary judgment in favor of the City of Terre Haute (City). The Ellises present several issues for review which we consolidate and restate as:

1. Did the trial court err in finding the Ellises liable under Indiana's Unsafe Building Law?

2. Did the trial court consider improper evidence?

We affirm.

The undisputed facts demonstrate that on September 13, 1983, Paula Crum became the owner a parcel of land in Terre Haute, Indiana, located in Vigo County.[1] On October 18, 1994, a dwelling on the property was severely damaged by fire. Thereafter, the City, by and through its Department of Redevelopment, inspected the property, declared it unsafe, and on May 22, 1995, filed an order (Order) in the Vigo County Recorder's Office stating that the structure on the property must be removed and providing notice to all interested parties pursuant to its authority under Indiana's Unsafe Building Law (Unsafe Building Law). On September 12, 1995, Crum transferred the property to Thomas O. Gonzalez by quitclaim deed, and on September 25, 1995, the City demolished the dwelling. The costs associated with the demolition were $2,961.00, which the City attempted to recover from

---

1. Appellants' brief alludes to the existence of a material issue of fact on several occasions, but fails to ever identify what that issue of fact is. Regardless, the Ellises do not dispute the facts recited herein.

Crum pursuant to the Unsafe Building Law. When Crum did not pay, the City sought and was awarded a judgment (Judgment) in the amount of the demolition costs, which was recorded on the Vigo County Judgment Docket. Crum never satisfied the Judgment. On January 29, 1996, Gonzalez conveyed the property to the Ellises by quitclaim deed. On July 27, 1998, the City filed a Complaint to Foreclose Judgment Liens on the property against Crum, Gonzalez, and the Ellises.

On August 27, 1999, the City filed a Motion for Summary Judgment against the Ellises. The City designated as evidence its Complaint, the affidavits of H. Dean Branson, the City's Real Estate Administrator, Timothy E. Fears, the City's attorney, and the Ellises' Answer. On April 7, 2003, the Ellises filed their response to the City's motion for summary judgment, and the City replied on June 5, 2003. On July 3, 2003, the trial court heard argument on the City's motion and on July 22, 2003, granted summary judgment in the City's favor.

On appeal, the Ellises claim that the trial court erred in finding them liable for the lien under the Unsafe Building Law. Further, the Ellises contend that the trial court erred by basing its decision on improper evidence, specifically, uncertified documents and affidavits containing factual misstatements and irrelevant material.

1.

The Ellises claim that the trial court incorrectly applied the Unsafe Building Law to find them liable because they held no interest in the property between the time the City's Order was recorded and the dwelling was demolished. Further, they assert the lien never attached to the property, but rather only to the real and personal property of Crum who, at the time of attachment, no longer owned the property.

In reviewing a grant of summary judgment, where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. *See Monar v. Hurt,* 791 N.E.2d 280 (Ind.Ct. App.2003). Interpretation of a statute is purely a question of law and we review the trial court's decision de novo. *In re K.J.A.,* 790 N.E.2d 155 (Ind.Ct.App.2003). The primary goal in interpreting the meaning of a statute is to determine and effectuate legislative intent. *Herron v. State,* 729 N.E.2d 1008 (Ind.Ct.App.2000). To determine legislative intent, we look to the plain language of the statute and attribute the common, ordinary meaning to terms found in everyday speech. *Id.*

As a general matter, the Unsafe Building Law allows municipalities and counties to regulate the use of property in order to protect the public health, safety, and welfare. *Freidline v. Civil City of South Bend,* 733 N.E.2d 490 (Ind.Ct.App.2000). The law authorizes the City to issue orders requiring action on unsafe premises as defined by statute, including requiring removal of a building deemed unsafe. Ind. Code Ann. § 36–7–9–5(a)(7) (West 1998). Further, the City must record any order issued pursuant to the statute in the office of the county recorder. I.C. § 36–7–9–26. Once properly recorded, "a person who takes an interest in unsafe premises that are the subject of an order takes that interest, whether or not a hearing has been held, subject to the terms of the order." I.C. § 36–7–9–26(b).

If the person(s) with an interest in the property does not take action on the City's order, the City may have the required action performed by a contractor pursuant to procedures detailed in I.C. § 36–7–9–11. I.C. § 36–7–9–10. If the action is performed by the contractor, each person who held an interest in the premises—from the time the order requiring the work per-

formed was recorded to the time that the work was completed—is jointly and severally responsible for costs, including, the actual cost of the work performed. I.C. § 36–7–9–12. If the costs are not paid within fifteen days after the work is completed and the City determines there is a reasonable probability of obtaining recovery, the City shall file a record with the clerk of the court, including:

> (1) the name and last known address of each person who held a fee interest, life estate interest, or equitable interest of a contract purchaser in the unsafe premises from the time the order requiring the work to be performed was recorded to the time the work was completed;
>
> (2) the legal description or address of the unsafe premises that were the subject of the work;
>
> (3) the nature of the work that was accomplished;
>
> (4) the amount of the unpaid bid price of the work that was accomplished; and
>
> (5) the amount of the unpaid average processing expense.

I.C. § 36–7–9–13(a). Thereafter, from the time the lien is recorded on the judgment docket, it becomes a lien on the property, and is perfected against all creditors and purchasers. I.C. § 36–7–9–13(e).

█ Here, the City recorded its Order to remove the unsafe building on May 22, 1995, in the Vigo County Recorder's Office. Judgment was entered against Crum and the property on November 6, 1995, and recorded on the Vigo County Judgment Docket. The Ellises acquired the property in question on November 16, 1995, by virtue of a quitclaim deed from Gonzalez, which they recorded January 29, 1996. The Ellises do not dispute these facts, rather they insist they are not liable be-

cause they held no interest in the property at the time the Order issued.[2] While the Ellises did not have an interest in the property between the time the City issued the Order and the dwelling was razed, this does not end the inquiry. As noted previously, the Unsafe Building Law provides that once an order is properly recorded a person who takes an interest in unsafe premises that are the subject of an order takes that interest subject to the terms of the order. I.C. § 36–7–9–26(b). Moreover, a judgment stemming from an outstanding order becomes a lien on the property and is perfected against subsequent purchasers of the property. I.C. § 36–7–9–13(e). Both the Order and Judgment were recorded before the Ellises took an interest in the property on November 6, 1995. Therefore, the trial court correctly determined that the Ellises are liable for the lien under the Unsafe Building Law.

█ The Ellises also claim the lien could only possibly attach to Crum's real and personal property but, in point of fact, never attached because Crum had transferred the property to Gonzalez at the time the Order was entered. The lien, however, not only attached to Crum's personal and real property, but to the property itself, and, therefore, it is of no consequence that Crum did not own the property when the lien was recorded. The trial court correctly granted the City summary judgment.

## 2.

The Ellises also contend that the trial court erred in granting summary judgment to the City based on its improper reliance on affidavits and documents filed with the City's pleadings.

---

**2.** At the hearing on this matter, the Ellises asserted they lacked notice of the cloud on the property's title, however, they failed to offer any evidence to rebut the recording of the Order and Judgment presented in the City's Real Estate Administrator's affidavit. The Ellises do not raise this issue on appeal.

Summary judgment is appropriate only if the pleadings and designated evidence show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Further, T.R. 56(E) requires that affidavits submitted in support of a motion for summary judgment be made on personal knowledge, shall set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify. *See, e.g., Meyer v. Marine Builders, Inc.,* 797 N.E.2d 760 (Ind.Ct.App.2003).

Prevailing on a motion for summary judgment under the Unsafe Building Law required the City to demonstrate there was no issue of material fact that: (1) the property was subject to an Order to Remove Unsafe Premises filed May 22, 1995, which became a judgment lien against the property on November 6, 1995; (2) the judgment lien remained owing; and (3) the Ellises took an interest in the property on November 16, 1995. In its motion for summary judgment, the City designated the affidavit of the City's Real Estate Administrator, H. Dean Branson, which attested to his occupation, his personal knowledge of the matters in the affidavit, and that he had "personally examined the records of [the City], by and through its Department of Redevelopment concerning the Defendant, Paula K. Crum, which records are maintained at [the City] by and through its Department of Redevelopment under his dominion and control." *Appellants' Appendix* at 103. Branson's affidavit further stated, in relevant part:

5. That an Order of the Department of Inspection to remove unsafe building was filed in the records of the Recorder's Office of Vigo County, Indiana, on May 22, 1995 at Miscellaneous Record 206, Page 635, indicating the structure of the real estate must be removed and providing notice to all interested parties pursuant to Indiana Code and the Defendants named herein are all subject to said notice provisions and take title subject thereto.

6. That the Plaintiff is the holder of a Judgment in the Vigo County Circuit Court in the sum of Two Thousand Nine Hundred Sixty–One Dollars ($2,961.00) against Paula K. Crum and the judgment is dated November 6, 1995 and was recorded at Book 51, Page 192, of the Vigo County Judgment Docket.

*Id.* Branson's affidavit further asserted that the lien remained unpaid and owing to the City.[3] Finally, at the summary judgment hearing the Ellises conceded they purchased the property on November 16, 1995, and recorded their interest on January 29, 1995. Based on this evidence alone, which the Ellises do not argue was improper, summary judgment was properly granted for the City, and we need not further address the Ellises' contentions regarding the affidavit of the City's attorney and additional documents.

Judgment affirmed.

BAILEY, J., and BAKER, J., concur.

---

**3.** The Ellises do not assert the portions of Branson's affidavit discussed above were improperly considered by the trial court. Rather, they take issue with the affidavit's references to a now-released mortgage on the property which the City conceded had no bearing on its pending motion for summary judgment but which was an issue when its Complaint was originally filed five years earlier. These outdated references, which the trial court correctly noted were irrelevant to the City's summary judgment motion, do not alter the evidentiary weight we grant to the remaining relevant portions of Branson's affidavit.